NOT FOR PUBLICATION

```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
                         CAMDEN VICINAGE
```

_____   :
HERBERT COUNCIL,                 :
                                 :
            Plaintiff,           :   Civil No. 06-7 (RBK)
       v.                        :
                                 :   **OPINION**
JOHN NASH, et al.,               :
                                 :
            Defendants.          :
_____   :

**KUGLER**, United States District Judge:

   This matter comes before the Court upon motion by defendants John Nash, C.J. DeRosa, Henry E. McKinnon, Jim Reiser, Kevin Bullock, Bob Donahue, Ronnie Holte, Walter B. Jones, John R. Owens, Scott Dodrill, E. L. Tatum, Jr., Harrell Watts, Tarra Moran, and the United States of America (collectively "Defendants") seeking dismissal, or in the alternative, an award of summary judgment, on the Complaint filed by plaintiff Herbert Council ("Plaintiff"), alleging violations of his constitutional rights and brought pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  For the reasons set forth below, this Court will grant in part and deny in part Defendants' motion.

I.   **BACKGROUND**

Following an order granting Plaintiff's request to proceed in forma pauperis, Plaintiff's Complaint was filed on February 3, 2006. At the time the Complaint was filed, Plaintiff was an inmate at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix"). The individual Defendants were all alleged to be either present or former employees of the Federal Bureau of Prisons, either at FCI Fort Dix or elsewhere in a supervisory capacity. In his Complaint, Plaintiff alleges that Defendants violated his constitutional rights. Specifically, Plaintiff alleges that Defendants violated his First Amendment rights by conspiring to apply a Public Safety Factor (PSF) against him in retaliation for his attempt to contact his Congressman to seek assistance in obtaining leave to attend his brother's funeral. Plaintiff further alleges that Defendants violated his Due Process rights by imposing these additional restrictions on him. Plaintiff additionally alleges that Defendants violated his Equal Protection rights by treating him differently than Latino inmates in similar or worse situations. Finally, Plaintiff alleges that Defendants violated his Eighth Amendment rights, as Defendants' alleged acts caused Plaintiff to experience stress, hypertension, and other physical injuries.

In their motion presently before this Court, Defendants claim that Plaintiff's claims should be dismissed due to his failure to exhaust administrative remedies. Defendants further

argue that this Court should dismiss all claims against the United States and Defendants sued in their official capacities, as the United States has not waived sovereign immunity for constitutional tort claims. Defendants additionally claim that they are entitled to qualified immunity. Furthermore, Defendants assert that this Court should dismiss Plaintiff's claims for compensatory damages, as he has suffered no permanent injury. Finally, Defendants argue that certain individual defendants are entitled to have all claims against them dismissed as the Complaint's allegations against them are premised on a theory of respondeat superior.

**II.   STANDARD**

Defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, summary judgment pursuant to Fed. R. Civ. P. 56. As Defendants rely on materials outside the pleadings, dismissal under Rule 12 is inappropriate. See Fagin v. Gilmartin, 432 F.3d 276, 280 (3d Cir. 2005) ("Federal Rule of Civil Procedure 12(b) requires conversion from a motion to dismiss to a motion for summary judgment when materials outside the pleadings are considered."). Therefore, Defendants' motion will be treated as one for summary judgment. As the motion is framed as such in the alternative, Plaintiff is deemed to have notice that the motion will be treated as one for summary

judgment. Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996).

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so,

4

the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**III. DISCUSSION**

    A.    Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1995 ("PLRA"), codified as 42 U.S.C. § 1997e, prisoners are precluded from contesting prison conditions in federal court until exhausting "all avenues of relief available to them within their prison's inmate grievance system." Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004) (holding that the failure to "properly" exhaust administrative remedies under the PLRA constitutes a procedural default).[1] The purpose of the exhaustion requirement is "(1) to return control of the inmate grievance process to prison

---

[1] Specifically, section 803(d) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

5

administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill, 372 F.3d at 230. With the requirement, Congress intended to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 227.

The exhaustion requirement's broad scope indicates that it "applies to all federal claims brought by any inmate," including claims related to specific incidents and claims of ongoing conditions. Porter v. Nussle, 534 U.S. 516, 520, 532 (2002). Claims requiring exhaustion include allegations of discrimination, Jones v. Maher, 131 Fed. Appx. 813, 815 (3d Cir. 2005), and physical attacks by officers or other inmates, Dempsky v. Walker, 420 F. Supp. 2d 370 (D.N.J. 2006). Additionally, the plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the relief requested in the suit. Nussle, 534 U.S. at 524. Grievance procedures set forth in an inmate handbook constitute such a remedy, even if they are not formally adopted by any state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1348, 1349 (3d Cir. 2002).

The prisoner must "carry the grievance through any available appeals process" before the remedies will be deemed exhausted. Camino v. Scott, No. 05-4201, 2006 WL 1644707, *4 (D.N.J. June 7, 2006) (citing Nyhuis, 204 F.3d at 67; Spruill, 372 F.3d at 232). Failure to exhaust remedies mandates dismissal of the inmate's claim. Booth v. Churner, 532 U.S. 731, 739 (2001); Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000); Wilkins v. Bittenbender, No. 04-2397, 2006 WL 860140 (M.D. Pa. Mar. 31, 2006).

In this instance, the Bureau of Prisons has set forth a process by which inmates may seek remediation for grievances. An inmate is to submit a written administrative remedy request to the warden. An inmate may then appeal this decision to the Regional Director, and then may appeal that decision to the Office of the General Counsel. 20 C.F.R. § 520.10 et seq.

Defendants argue that Plaintiff's written remedy requests detail only his claim that the issuance of a PSF was retaliatory in nature and therefore a violation of his First Amendment rights. Defendants assert that Plaintiff's administrative remedy requests never set forth a claim that his Due Process rights, Equal Protection Rights, or Eighth Amendment rights had been violated, and therefore Plaintiff has not exhausted his

7

administrative remedies as to these claims.[2]  This Court agrees.  The Third Circuit has stated that "retaliation itself constitutes a separate claim."  Hoffenberg v. Provost, 154 Fed. Appx. 307, 311 (3d Cir. 2005), cert. denied, 127 S. Ct. 39 (U.S. Oct. 2, 2006) (No. 05-9989) (citing Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990)).  In Hoffenberg, the Third Circuit held that although Plaintiff had exhausted certain claims, he had not done so for his retaliation claims, and therefore those claims were procedurally defaulted.  In the case presently before this Court, the reverse is true.  Accordingly, this Court holds that while Plaintiff has exhausted his First Amendment retaliation claim, he has not done so for his other claims, and these claims are therefore procedurally defaulted.

Additionally, Defendants claim that Plaintiff's remedy forms mention only certain defendants, and therefore argue that Plaintiff has not exhausted his administrative remedies as to the other defendants.  However, the Supreme Court has stated that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.  We leave it to the court below in the first instance to determine the sufficiency of

---

[2] See Jones v. Bock, 127 S. Ct. 910, 924 (U.S. 2007) (holding that when a Complaint contains both exhausted and unexhausted claims, a Court should dismiss only the unexhausted claims).

the exhaustion in these cases." Jones v. Bock, 127 S. Ct. 910, 923 (U.S. 2007). Having reviewed the parties' submissions, this Court notes that Plaintiff made clear repeatedly in his remedy form and subsequent appeals that his claims of retaliation were directed exclusively at McKinnon, Bullock, and Reiser. Accordingly, this Court finds Plaintiff to exhausted his administrative remedies for his retaliation claim against these three defendants, and will allow Plaintiff to proceed with this claim. This Court will dismiss Plaintiff's claims as to all other defendants, having found them to be procedurally defaulted.

    B.    Sovereign Immunity

The United States has sovereign immunity except where it consents to be sued. United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (stating that a suit against a government officer in his or her official capacity is a suit against the government). Therefore, having already dismissed all of Plaintiff's claims other than his claim for retaliation against three Defendants, this Court will further dismiss Plaintiff's First Amendment claim

against the United States and against the individual Defendants in their official capacities, leaving only Plaintiff's retaliation claim against defendants McKinnon, Bullock, and Reiser in their individual capacities.

    C.    <u>Plaintiff's First Amendment Claim</u>

        1.    <u>Suit pursuant to</u> Bivins

As stated above, Plaintiff brings this action pursuant to <u>Bivens</u>. In <u>Bivens</u>, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[3]

In order to state a claim under <u>Bivens</u>, Plaintiff must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. <u>See</u> <u>Mahoney v. Nat'l Org. for Women</u>, 681 F. Supp. 129, 132 (D. Conn. 1987) (citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149,

---

    [3]  <u>Bivens</u> actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004), <u>cert</u>. <u>denied</u>, 543 U.S. 1049 (2005). Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel," there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits. <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987))

155-56 (1978)).

Additionally, government officials who are accused of violating a person's constitutional rights while performing discretionary functions are entitled to qualified immunity. Qualified immunity shields officials "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This analysis is two-fold. First, the court is to assess whether the facts as alleged by the plaintiff amount to a constitutional violation. If this test is met, the court then determines whether the right is "clearly established." Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004). In other words, before engaging in a determination of whether a right is clearly established, the court must first determine whether a constitutional violation has occurred, because "[i]f the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Id. at 776 (quoting Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002)). Therefore, this Court must first assess the claims made by Plaintiff to determine whether they amount to a violation of his constitutional rights. Only if such a finding is made does this Court then proceed to analyze whether the right violated was

11

clearly established.

    2.   <u>Analysis</u>

The Third Circuit has clearly stated that "a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied." <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001). Instead, to set forth such a claim, "[a] prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003) (quoting <u>Rauser</u>, 241 F.3d at 333). If a plaintiff satisfies these factors, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Rauser</u>, 241 F.3d at 334.

Preliminarily, this Court notes that Plaintiff's letters to his Congressman constitute speech protected by the First Amendment. The First Amendment explicitly provides for the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. Moreover, "[t]he 'government' to which the First Amendment guarantees a right of redress of grievances

12

includes the prison authorities, as it includes other administrative arms and units of government." Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Accordingly, "[i]nmates have a First Amendment right to complain to governmental entities about prison conditions." McGarvey v. Borgan, No. 04-C-269-C, 2004 U.S. Dist. LEXIS 11905, at *8 (W.D. Wisc. June 24, 2004) (citing Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002)). Furthermore, Plaintiff asserts that he suffered an adverse action, as he claims that he was assigned a PSF, the effect of which was to prevent his transfer to a lower security level of custody.

Finally, this Court must determine whether Plaintiff has shown that his constitutionally protected conduct caused the adverse action to be taken. Plaintiff alleges that on March 28, 2002, he was given a PSF for Serious Telephone Abuse. Specifically, the evidence before this Court reflects that Plaintiff was assigned a PSF for making over 837 telephone calls and speaking in code. Plaintiff alleges that this PSF is to expire after two years, meaning that by June of 2004, the PSF should have expired. Plaintiff claims that this PSF was therefore improperly used to prevent his transfer to a lower security institution, and that this was done as a means of retaliating against him for having contacted his Congressman. Plaintiff claims that when certain Defendants submitted a request

13

for Plaintiff's transfer, they submitted documentation which alleged that Plaintiff maintained a PSF; Plaintiff asserts that such documentation was incorrect, as his PSF had expired.

This Court has reviewed the evidence submitted by both Plaintiff and Defendants.  DeRosa, then the Warden at FCI Fort Dix, sent a Request for Transfer dated June 30, 2004 to Dodrill, the Regional Director, asking that Plaintiff be transferred to a minimum security facility.  (Defs.' Br. Ex. A.)  In the documentation accompanying this request, Plaintiff is noted to have a PSF of "phn abuse."  (Defs.' Br. Ex. A.)  Notably, this form, which has a "form date" of June 30, 2004, differs from an identical form with a "form date" or March 1, 2004, which contains no reference to a PSF for phone abuse.  As a result, the June 30, 2004 form scores Plaintiff's custody level as "low," while the March 1, 2004 form scores his custody level as "minimum."  This evidence meshes with Plaintiff's assertion in his Complaint that "[o]n or about June 30, 2004, a new retaliatory custody classification BP 15/BP 338 Form was updated by Mr. Bullock, and signed and approved by Mr. McKinnon, Mr. Donahue, Mr. Owens, Mr. Reiser, Mr. Jones, Mr. Holte, and C.J. DeRosa to deny Plaintiff's decrease for a lesser custody level (minimum out) for camp placement because of an expired Phone Abuse incident and because the Plaintiff had sought the assistance for his Public Official. (Congressman Watts.)."

(Compl. ¶ 41.)  While Defendants argue in their brief various reasons why this may have transpired, they do no more than offer this Court factual questions that this Court cannot properly consider on a motion for summary judgment.  Moreover, while Defendants proffer a legitimate penological reason for the existence of a PSF, they do not explain why this information was apparently added to Plaintiff's Custody Classification Form over two years after the incident in question occurred and in temporal proximity to Plaintiff's attempt to contact his Congressman. Given Plaintiff's assertion that Defendants McKinnon, Bullock, and Reiser added this information to his Custody Classification Form as a means of retaliation, the fact that the evidence presented to this Court comports with his assertion, and the temporal proximity of Plaintiff's protected action and the alleged retaliatory acts, see Yatzus v. Appoquinimink Sch. Dist., 458 F. Supp. 2d 235, 244 (D. Del. 2006) ("Temporal proximity is some evidence of a causal link between two events.") (citing Kacmar v. Sungard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997)), this Court finds that, taking the facts in a light most favorable to Plaintiff, Plaintiff has met his burden in establishing facts that would allow a factfinder to conclude that a constitutional violation has transpired.  Furthermore, as allegations of retaliation "state a claim for violation of clearly established rights under the First Amendment," Larsen v.

Senate of the Commonwealth of Pennsylvania, 154 F.3d 82, 95 (3d Cir. 1998), Defendants are not entitled to qualified immunity.

    D.    <u>Compensatory Damages</u>

Finally,[4] Defendants argue that Plaintiff is not entitled to compensatory damages, as he has suffered no physical injury. This argument does not follow from Plaintiff's Complaint, in which he alleges that he suffered physical injuries including stress and hypertension.  As Defendants have offered no evidence to suggest otherwise, this Court will deny Defendants' motion insofar as it seeks to have Plaintiff's claim for compensatory damages dismissed.

**IV.  CONCLUSION**

Based on the foregoing reasoning, this Court will grant in part and deny in part Defendants' motion.  Specifically, this Court will deny Defendants' motion as to Plaintiff's claim for a violation of his First Amendment rights against Defendants McKinnon, Reiser, and Bullock in their individual capacities. This Court will grant Defendants' motion as to Plaintiff's other claims and as to all other Defendants.  The accompanying Order shall issue today.

---

[4] This Court need not consider Defendants' argument that Plaintiff's allegations against certain Defendants are based on an impermissible theory of <u>respondeat</u> <u>superior</u>, as the Court has found that Plaintiff did not exhaust his administrative remedies as to these Defendants.

Dated: June 8, 2007             s/ Robert B. Kugler
                                ROBERT B. KUGLER
                                United States District Judge