(Not for publication)                               (Docket Entry No. 127)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                              :
HERBERT COUNCIL,                              :
                                              :
                    Plaintiff,                :        Civil No. 06-07 (RBK)
                                              :
          v.                                  :        **OPINION**
                                              :
JOHN NASH, et al.,                            :
                                              :
                    Defendants.               :
_____         :

**KUGLER**, United States District Judge:

      Presently before the Court is a motion for summary judgment filed by Defendants Henry

McKinnon, Kevin Bullock, and James Reiser seeking summary judgment on the Complaint filed

by Plaintiff Herbert Council ("Plaintiff"), alleging a violation of his First Amendment rights and

brought pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403

U.S. 388 (1971).  For the reasons set forth below, Defendants' motion will be denied as to the

First Amendment claim against McKinnon and granted as to the First Amendment claim against

Bullock and Reiser.  In addition, Defendants' motion will be granted with respect to any

conspiracy claim Plaintiff may have raised.

**I.  BACKGROUND**

      Plaintiff claims that while he was a prisoner at the Federal Correctional Institution at Fort

Dix, New Jersey ("FCI Fort Dix"), McKinnon, Bullock, and Reiser retaliated against him for

writing to his Congressman by assigning him a public safety factor ("PSF") which prevented his transfer to a lower-security facility.  During the time at issue in this suit, Bullock was Plaintiff's Case Manager at FCI Fort Dix and McKinnon was Plaintiff's Unit Manager.  Reiser was a Case Manager and, on at least one occasion, served as acting Unit Manager for Plaintiff's housing unit. The parties disagree as to whether he ever served as Plaintiff's Case Manager.

As a Case Manager, Bullock conducted annual custody classification reviews of inmates, which resulted in an inmate classification score for each inmate.  The application of PSFs, which relate to certain behaviors that require increased security measures to protect the community, affect this score.  If an inmate's score is higher or lower than the score required at FCI Fort Dix, the inmate may be transferred to another facility.

After completing Plaintiff's annual classification review, in which Bullock determined that Plaintiff's score merited placement in a minimum security facility, Bullock prepared a form on June 24, 2004 recommending that Plaintiff be moved to a minimum security facility.  At this time, Plaintiff did not have a PSF applied against him.

Also on June 24, 2004, Plaintiff requested an escorted trip to North Carolina to attend his brother's funeral.  Plaintiff also wrote to Congressman Melvin Watts, seeking the Congressman's assistance in obtaining a furlough to attend the funeral.  Plaintiff's request to attend the funeral was denied.

On June 30, 2004, Plaintiff's transfer was denied because a PSF for Serious Telephone Abuse ("Phone Abuse") was applied.  The Phone Abuse PSF is applied when an inmate has been found guilty of a 100 or 200 level offense code for telephone abuse.   In April 2002, Plaintiff had been found guilty of Use of Phone for Abuses other than Criminal Activity, which has a 200

2

level offense code.  Normally, a 200 level incident report is used for two years in determining an inmate's classification score.  The Phone Abuse PSF which appeared on the June 30, 2004 report had not appeared on several of Plaintiff's custody classification forms prepared earlier in 2004. (See Ex. C to Plaintiff's Opposition to Defendants First Motion for Summary Judgment, Custody Classification forms dated 6/9/04, 4/5/04, 2/13/04.)

On February 3, 2006, Plaintiff filed a complaint against the United States of America and numerous employees of the Federal Bureau of Prisons ("Bureau"), claiming, inter alia, that the application of the Phone Abuse PSF and denial of his transfer constituted retaliation for his protected First Amendment activity.  In a previous decision, this Court dismissed all of Plaintiff's claims except Plaintiff's First Amendment claim against McKinnon, Bullock, and Reiser.  See Council v. Nash, No. 06-07, 2007 WL 1686512, at *6 (D.N.J. June 8, 2007).  These remaining defendants ("Defendants") then filed the motion for summary judgment currently before the Court.

## II.  STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment. Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

Defendants make three arguments in support of their motion for summary judgment. First, Defendants argue that they are entitled to summary judgment with respect to Plaintiff's First Amendment retaliation claim because Plaintiff cannot establish a causal connection between his letter to his Congressman and the decision to apply a PSF and deny his transfer. Second, Defendants argue that even if Plaintiff could establish a causal link, they are entitled to summary judgment because the same decision would have been made absent the protected activity for reasons reasonably related to a legitimate penological interest.  Third, Defendants argue that Plaintiff cannot prevail on his conspiracy claim.

4

### A.  Plaintiff's Retaliation Claim: Causation

Defendants first argue that they are entitled to summary judgment because Plaintiff has

not established a causal connection between a protected activity and an adverse action taken

against him.  A prisoner alleging that prison officials have retaliated against him in violation of

the First Amendment must show "(1) constitutionally protected conduct, (2) an adverse action by

prison officials 'sufficient to deter a person of ordinary firmness from exercising his

[constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and

the adverse action taken against him.'"  Mitchell v. Horn, 318 F. 3d 523, 530 (3d Cir. 2003)

(quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).  In addition, in any Bivens action,

the plaintiff must show that the defendants were personally involved in, or acquiesced in, the

violation of his federal rights.  Farmer v. Carlson, 685 F. Supp. 1335, 1338 (M.D. Pa. 1988).

This Court already determined that Plaintiff engaged in constitutionally protected conduct

when he wrote to his Congressman and that Plaintiff suffered an adverse action when he was

assigned a PSF which prevented his transfer to a lower security level of custody.  Council v.

Nash, 2007 WL 1686512, at *5.  With respect to causation, this Court found that the temporal

proximity between Plaintiff's protected activity and the application of a PSF created a genuine

issue of material fact.  Id.  Now, Defendants argue that Plaintiff cannot establish causation

because (1) Joseph Pecoraio, a Correctional Treatment Specialist at the Northeast Regional

Office of the Bureau, made the decision to deny Plaintiff a transfer and apply the Phone Abuse

PSF, and there is no evidence that Defendants were involved in this decision; (2) the assignment

of the PSF was consistent with Bureau policy and the circumstances of Plaintiff's phone abuse

offense; and (3) the decision to assign the PSF and deny the transfer request was unrelated to

Plaintiff's letter to his Congressman.

### 1. Personal Involvement of the Defendants

Defendants argue that they were not personally involved in the decision to apply the PSF or deny Plaintiff's transfer, and therefore that they cannot be held liable.  In support of this argument, Defendants have presented their own declarations and the declaration of Pecoraio, which states that he alone made the decision to apply the PSF and deny the transfer.  However, Plaintiff has presented evidence that McKinnon signed the custody classification form which states that a decrease is not warranted because of the Phone Abuse PSF.  (Pl.'s Ex. 3.)  This creates a genuine issue of fact as to McKinnon's involvement.

Plaintiff has not, however, presented evidence linking Reiser and Bullock to the decision to apply the PSF and deny Plaintiff's transfer.  Plaintiff cites the Bureau Policy Statement that the unit team has authority to make custody assignments.  (Pl.'s Ex. 2.)  The existence of this Policy Statement is not evidence that Bullock and Reiser personally participated in the decision with regard to Plaintiff's placement.  Plaintiff also cites a letter from the Warden of FCI Fort Dix to Plaintiff's wife.  (Pl.'s Ex. 4.)  Plaintiff states that in this letter the Warden said "that it was him, meaning the unit team (Defendants Bullock, McKinnon and Reiser) as being the ones whom applied the PSF and the Northeast Regional Office staff concurred with it." (Pl.'s Br. at 8.)  The letter, however, does not mention Bullock, McKinnon, Reiser or the unit team.  Because the policy statement and letter offered by Plaintiff do not establish a genuine issue of material fact as to Reiser and Bullock's involvement in the decision to apply the PSF and deny Plaintiff's transfer, Reiser and Bullock are entitled to summary judgment.

### 2.   Whether the Decision Was in Accordance with Bureau Policy

Defendants next argue that incident reports never expire for purposes of applying PSFs, and therefore that the decision to apply the Phone Abuse PSF was in accordance with Bureau policy.  However, according to Bullock, "a 200 level incident report will be used for **two years** to score the inmate on his custody classification form with regard to prior disciplinary history." (Declaration of Kevin Bullock at ¶ 12 (emphasis added).)  Furthermore, Plaintiff presented evidence that the Phone Abuse PSF was not on several of his custody classification forms in the months preceding the denial of his transfer.  (Ex. C to Pl.'s Brief in Opposition to Defs.' First Motion for Summary Judgment, Custody Classification Forms dated 6/9/04, 4/5/04, 2/13/04.) As this Court previously concluded, the temporal proximity between Plaintiff's letter to his Congressman and the reappearance of a PSF for a violation more than two years old creates a genuine issue as to whether Plaintiff's First Amendment activity was the reason the PSF was applied.  Council v. Nash, 2007 WL 1686512, at *5.

### 3.   Whether the Decision was Related to Plaintiff's Protected Activity

Finally, relying on Pecoraio's declaration, Defendants argue that the decision to apply the PSF and deny Plaintiff's transfer was unconnected to Plaintiff's protected activity.  However, as discussed above, genuine issues of material fact preclude the Court from drawing such a conclusion at this time.

### B.  Plaintiff's Retaliation Claim: Legitimate Penological Interests

Defendants argue that even if Plaintiff can satisfy his initial burden of producing evidence of a protected activity, an adverse action by prison officials, and a causal connection between the two, they are entitled to summary judgment because their decision was based on legitimate

penological interests.  Defendants may prevail on a retaliation claim if they show " that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  While Defendants have offered evidence that their decision was in accordance with Bureau policy on phone abuse, they have failed to show the absence of a genuine issue of material fact.  As this Court has already stated "while Defendants proffer a legitimate penological reason for the existence of a PSF, they do not explain why this information was apparently added to Plaintiff's Custody Classification Form over two years after the incident in question occurred and in temporal proximity to Plaintiff's attempt to contact his Congressman."  Council v. Nash, 2007 WL 1686512, at *5.  Defendants have offered nothing in the present motion for summary judgment that changes this Court's conclusion that genuine issues of material fact remain.

### C.  Conspiracy Claim

Defendants argue that Plaintiff cannot establish a First Amendment conspiracy claim against them.  In order to defeat Defendants' summary judgment motion with respect to conspiracy, Plaintiff must produce evidence of (1) the violation of a right protected under Bivens and (2) "actions taken in concert by defendants with the specific intent to violate [that] right." See Williams v. Fedor, 69 F. Supp. 2d 649, 665 (M.D. Pa. 1999) (discussing personal involvement requirement in conspiracy claim brought under 42 U.S.C. § 1983).  "There must be an agreement or an understanding to deprive the complaining plaintiff of his or her constitutional rights."  Id.

In this case, Plaintiff has presented evidence to show the violation of his First Amendment right to petition the government for a redress of grievances.   However, Plaintiff  has

not presented evidence that Defendants acted in concert with the intent to deprive Plaintiff of this right.  As to Bullock and Reiser, Plaintiff has not presented evidence that they were involved in the decision to apply the Phone Abuse PSF or deny Plaintiff's transfer.   Furthermore, Plaintiff has not presented evidence of an agreement or understanding between McKinnon and anyone else to deprive Plaintiff of his First Amendment rights.  Therefore, to the extent that Plaintiff states a claim of conspiracy, Defendants are entitled to summary judgment with respect to that claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion is denied as to the First Amendment claim against McKinnon and granted as to the First Amendment claim against Bullock and Reiser.  In addition, Defendants' motion is granted with respect to any conspiracy claim Plaintiff raised.  An accompanying order shall issue today.

Dated:   1/22/09                              /s/ Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge